

# Missouri Court of Appeals
## Western District

IN RE THE ADOPTION OF: )
K.L.C.B.; J.A.S.; AND C.S., )
                            ) **WD85559**
            **Respondents,** )
**v.** ) **OPINION FILED:**
                            ) **AUGUST 22, 2023**
**D.L.B.,** )
                            )
            **Appellant.** )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Kevin Duane Harrell, Judge**

**Before Division Two: W. Douglas Thomson, Presiding Judge,**
**Thomas N. Chapman, Judge, and Janet Sutton, Judge**

J.S. and C.S. filed a petition for stepparent adoption in the Circuit Court of Jackson County. The circuit court entered a judgment and decree of adoption. Grandmother appeals, arguing that the circuit court erred in denying her motion to intervene. Grandmother contends that the circuit court erred (1) in denying her intervention of right pursuant to Rule 52.12.(a) and (2) in denying her permissive intervention pursuant to Rule 52.12(b). The judgment is reversed and the case remanded.

## Background

Child was born in Jackson County, Missouri to S.B. (Child's biological mother, "Mother") and J.S. (Child's biological father, "Father"). Child is now seven years old. In July of 2019, Mother passed away.

## Initial Custody Proceedings

On February 12, 2020, Grandmother (the maternal grandmother of Child) filed a Petition for Declaration of Third-Party Custody of Child in the Circuit Court of Jackson County. The petition alleged that Child had resided in the physical custody of Mother from the time of Child's birth until Mother's death; that Child resided in the physical custody of Grandmother after Mother's death; that Father was the biological father of Child; that Father lived at an address in California; and that Father had proven unwilling, unable, and unfit to act as Child's father. The petition requested third-party custody pursuant to section 452.375.5(5)(a).[1] The petition requested that Grandmother be granted sole legal and sole physical custody of Child. The petition also requested child support and attorney's fees from Father.

Father filed an answer to Grandmother's petition. On May 18, 2020, Father filed a petition for a writ of habeas corpus that sought an order releasing Child

---

[1] Unless otherwise indicated, statutory references are to RSMo 2016, as updated through the 2018 cumulative supplement.

from the custody and care of Grandmother. The petition alleged that Father was the legal custodian of Child; that Grandmother had taken physical custody of Child following the death of Mother without notice to Father; that Father had first learned of Mother's death in December of 2019 in conjunction with a subsequently dismissed guardianship petition filed by Grandmother; that Father was fit and willing to care for Child; that Father had provided for Child financially; and that Grandmother had refused to release Child to Father or speak to Father regarding Child's wellbeing.

Grandmother filed an answer to Father's writ petition, arguing that the writ of habeas corpus would be an improper remedy because the question of Child's custody was already pending before the circuit court.

The circuit court denied relief on Father's writ petition. A bench trial was scheduled on Grandmother's third-party custody petition. Father, Grandmother, and the guardian ad litem ("GAL") for Child filed a joint motion for continuance that indicated that Father had moved to Missouri in October of 2020, and that the parties were working on details of a stipulated temporary parenting plan. A temporary stipulated parenting plan was filed with the circuit court in December of 2020 with the approval of Father, Grandmother, and the GAL. Trial was set for May of 2021.

3

On May 10, 2021, the circuit court entered an order indicating that a settlement had been reached. On June 9, 2021, Father, Grandmother, and the GAL filed a proposed judgment of modification, indicating that the parties had agreed to a joint stipulated parenting plan.

On June 10, 2021, the circuit court entered judgment on Grandmother's petition for third-party custody. The judgment incorporated the terms of the parties' joint stipulated parenting plan under which Father and Grandmother would have joint legal custody and joint physical custody of Child according to the terms of the plan. Regarding physical custody, the parenting plan included a schedule indicating the times when Child would be in the physical custody of Father and when Child would be in the physical custody of Grandmother. The circuit court found that the plan was in the best interest of Child, and indicated that the plan resolved the issues raised in Grandmother's petition pursuant to section 452.375. The judgment indicated that the circuit court established exclusive and continuing jurisdiction in the action and that the judgment was the initial child custody determination.

Adoption Proceedings

On December 27, 2021, Father and his wife, C.S. ("Stepmother"), filed a "PETITION FOR STEP-PARENT ADOPTION" in the Circuit Court of Jackson

County. This petition was filed as a separate case and with a separate case number than the prior custody proceedings. The petition requested that a decree of adoption be entered, and that Father and Stepmother be declared Child's parents for all intents and purposes.

On December 27, 2021, the court appointed a GAL for Child in the adoption proceedings. On January 3, 2021, the court appointed a licensed clinical social worker to conduct a home-study investigation of the stepparent adoption.

Grandmother was served with a copy of the petition and a summons to appear in the adoption proceedings. On January 17, 2022, Grandmother filed a motion to intervene, which argued that the adjudication of a stepparent adoption would sever, destroy, or decrease Grandmother's established joint legal custody and joint physical custody rights. The motion argued that Grandmother was entitled to intervene as a matter of right, and it also argued that the court should grant permissive intervention. Grandmother requested that she be allowed to file a responsive pleading and present evidence in the proceedings. Father and Stepmother opposed the motion, arguing that Grandmother's established custody rights were previously established by court order, such that the adoption would not modify that custody judgment and that the adoption would not affect Grandmother's custody rights.

5

On February 1, 2022, Grandmother filed a second motion to intervene. Grandmother's second motion to intervene was denied on April 13, 2022. Grandmother's first motion to intervene was denied on April 21, 2022.

On April 29, 2022, Grandmother filed a third motion to intervene, which again argued that Grandmother's custody rights would be altered by the adoption. Grandmother requested that she be allowed to intervene as a matter of right or permissively. Grandmother attached an answer to the motion to intervene. Father and Stepmother again argued that the adoption would not affect Grandmother's custody rights. The court denied Grandmother's third motion to intervene.

A hearing was held on the adoption petition on May 26, 2022. On June 1, 2022, the circuit court entered a judgment and decree of adoption, which declared Child to be the child of Stepmother for all legal intents and purposes. The judgment further changed the name of Child on Child's birth certificate.

Grandmother now appeals to this court.

**Jurisdiction**

Before addressing the merits of Grandmother's appeal, we must first address our jurisdiction to hear this appeal. *See State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 399 (Mo. banc 2016). Father and Stepmother argue that we lack jurisdiction over the appeal because Grandmother's motions to intervene were

6

denied by interlocutory orders that were not denominated as judgments or decrees and because the interlocutory orders were signed by a family court commissioner rather than a circuit court judge.

Generally, section 512.020 enumerates circumstances under which an aggrieved party in a civil case has a right to appeal. Generally, section 512.020(5) provides that an aggrieved party can appeal from a final judgment in a civil case. Regarding the fact that the orders in this case were interlocutory, the Missouri Supreme Court has made clear that an earlier interlocutory order denying a motion to intervene is incorporated into a later entered judgment which adjudicates the remaining claims, rights, and liabilities of all parties in the case. *See ConocoPhillips*, 493 S.W.3d at 401. *ConocoPhillips* also made clear that a proposed intervenor is aggrieved from a final judgment that incorporates the prior order denying the motion to intervene. *See id.* Accordingly, a proposed intervenor may appeal from a final judgment which incorporates (either explicitly or implicitly) a prior interlocutory order denying the motion to intervene. *See id.* at 401-02 ("[T]he interlocutory order is incorporated into and becomes a part of the final judgment to the same extent as though the issue was decided (or re-decided) as an express term of the final judgment."). Thus, the fact that the orders denying intervention in this case were interlocutory does not deprive this court of

7

jurisdiction over this appeal, as those orders were subsequently incorporated into the circuit court's final judgment.

Regarding the fact that a family court commissioner entered the interlocutory orders in this case, the record indicates that the family court commissioner transferred all papers relative to the proceedings to the circuit judge along with the commissioner's findings and recommendations. *See* Rule 130.08. The circuit court then entered judgment adopting the commissioner's findings and recommendations. We conclude that the interlocutory orders denying intervention were implicitly incorporated into the circuit court's judgment and decree of adoption. *See ConocoPhillips*, 493 S.W.3d at 401. Thus, the interlocutory orders denying Grandmother intervention had received the approval of the circuit court and became a part of the final judgment entered in this case. We have jurisdiction over Grandmother's appeal from that final judgment.[2]

---

[2] Additionally, although not argued by the parties, section 453.060.1 requires service on numerous persons and entities. Pursuant to section 453.060.1(3), such service is required upon "[a]ny person, agency, organization or institution, within or without the state, having custody of the child sought to be adopted under a decree of a court of competent jurisdiction even though its consent to the adoption is not required by law[.]" Section 453.060.4 provides that, upon service, the judgment is binding on all parties so served, and further provides that "[a]ny such party has the right to appeal from the judgment in the manner and form provided by the civil code of Missouri." Grandmother had joint legal and physical custody of Child at the time the adoption petition was filed and the record indicates that Grandmother was served pursuant to section 453.060.1.

**Analysis**

Grandmother raises two points on appeal. In her first point, Grandmother contends that the trial court erred in denying her motion for intervention as a matter of right. In her second point on appeal, Grandmother argues that the trial court erred in denying her permissive motion for intervention. Because we agree that Grandmother was entitled to intervene as a matter of right in the adoption proceedings, it is unnecessary to address Grandmother's second point regarding permissive intervention.

We "will affirm a trial court's decision concerning intervention as a matter of right under Rule 52.12(a) unless there is no substantial evidence to support that decision, it is against the weight of the evidence, or it erroneously declares or applies the law." *ConocoPhillips*, 493 S.W.3d at 403.

Grandmother contends that the trial court erred in denying her motion for intervention as a matter of right because the trial court misapplied Rule 52.12(a), which Grandmother contends granted her a right to intervene in the adoption proceedings. Grandmother points out that she has joint legal and physical custody of Child pursuant to the June 10, 2021 judgment of the circuit court. Grandmother argues that the disposition of the stepparent adoption impeded Grandmother's

ability to protect her custodial interest and that her custodial interests were not adequately represented by an existing party in the adoption case.

Rule 52.12(a) provides:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In other words, unless a proposed intervenor contends that a statute grants an unconditional right,[3] the proposed intervenor must establish three elements to be entitled to intervene as a matter of right: "(1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." *Allred v. Carnahan*, 372 S.W.3d 477, 481 (Mo. App. W.D. 2012) (quoting *State ex rel. Nixon v. American Tobacco Co., Inc.*, 34 S.W.3d 122, 127 (Mo. banc 2000)).

"An interest, for purposes of intervention as of right, means a concern, more than mere curiosity, or academic or sentimental desire." *In Matter of Adoption of*

---

[3] Grandmother does not argue that a statute grants her an unconditional right to intervene.

10

*C.T.P.*, 452 S.W.3d 705, 714 (Mo. App. W.D. 2014) (internal quotations omitted). "An interest necessary for intervention as a matter of right does not include a mere, consequential, remote or conjectural possibility of being affected as a result of the action, but must be a direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment." *Id.* at 714-15. "One 'interested' in an action is one who is concerned in the outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree in such action." *In re Adoption of H.M.C.*, 11 S.W.3d 81, 90 (Mo. App. W.D. 2000) (citing *In the Matter of Trapp*, 593 S.W.2d 193, 204 (Mo. banc 1980)).

Grandmother argues that she has an interest in the subject matter because she has previously established joint legal and physical custody of Child in prior custody proceedings. We agree that this satisfies the first element under Rule 52.12(a). The judgment issued in the custody proceedings declared Grandmother to be the joint legal and physical custodian of Child along with Father. According to the judgment, joint legal custody meant that both Father and Grandmother had equal rights and responsibilities with respect to Child. Father and Stepmother then filed the adoption petition in separate proceedings to establish Stepmother as an additional parent of Child, which would directly place Stepmother in a favored

11

position to Grandmother regarding custody. *See In Interest of C.L.M.*, 625 S.W.2d 613, 617 (Mo. banc 1981); *C.T.P.*, 452 S.W.3d at 718 n.27 (noting that an adopting parent, just like a natural parent, enjoys the "primary right of custody"). We find that Grandmother had a sufficient interest in the adoption proceedings to support intervention as a matter of right by virtue of her established custodial rights and responsibilities with respect to Child. As Child's joint custodian, Grandmother had a sufficient interest in the subject matter of the adoption proceedings after which Child would potentially have a new parent for all legal purposes.

We also conclude that Grandmother "is so situated that the disposition of the action may as a practical matter impair or impede [Grandmother's] ability to protect" her custodial interest in Child. *See* Rule 52.12(a). Because the consequence of the adoption proceeding was to declare Stepmother to be Child's parent for all legal purposes, *see* section 453.090.1,[4] and because Stepmother would then have a superior (although not absolute) right to custody of Child than Grandmother in proceedings following the adoption, *see C.T.P.*, 452 S.W.3d at 717,

---

[4] The consequences of adoption are set forth by section 453.090. Section 453.090.1 provides:

> When a child is adopted in accordance with the provisions of this chapter, all legal relationships and all rights and duties between such child and his natural parents (other than a natural parent who joins in the petition for adoption as provided in section 453.010) shall cease and determine. Such child shall thereafter be deemed and held to be for every purpose the child of his parent or parents by adoption, as fully as though born to him or them in lawful wedlock.

Grandmother's ability to protect her custodial interests would clearly be impaired as a practical matter.

Finally, Grandmother has satisfied the third element required for intervention as a matter or right, as there is no indication that Grandmother's custody rights would be adequately protected by the existing parties in the adoption case.

Father and Stepmother rely on *C.T.P.* for the proposition that custody is not at issue in an adoption, such that Grandmother's interest is insufficient to support intervention as a matter of right. In *C.T.P.*, our court held that a person who wished to establish third-party custody under section 452.375.5(5) could not intervene as a matter of right in an adoption proceeding. *C.T.P.*, 452 S.W.3d at 715. Our court held that the proposed intervenor's interest in determining custodial rights was insufficient to support intervention as a matter of right in adoption proceedings because determinations of custody are not in issue in adoption proceedings. *Id.* at 717. The court noted that "an adoption proceeding is not a child custody determination wherein competing custodial rights to a child are weighed and determined by the court." *Id.* at 716. Instead, an adoption proceeding "requires a court to determine whether the creation of a parent-child relationship is in the best interests of a child." *Id.* After examining a number of statutory provisions and

cases in support of its holding, *C.T.P.* then reiterated that custody is not "in issue" in an adoption proceeding, and further stated that to support intervention as a matter of right in an adoption proceeding, the "proposed intervenor must claim a superior legal right to adopt." *Id.* at 718.

Although *C.T.P.* may have been accurate in stating that a person *wishing to establish* custodial rights must claim a superior right to adopt in order to intervene in an adoption proceeding, *C.T.P.* is clearly distinguished from the matter now before us. The *C.T.P.* court was not confronted with a situation in which a party with *existing* custody rights sought to intervene in the adoption proceedings, and did not address such a situation. In the matter before us, Grandmother did not seek to determine custody in the adoption proceedings, but instead sought to intervene to protect her legal and physical custodial rights which had previously been established in separate custody proceedings.

In any case, the *C.T.P.* court was fully aware that adoption proceedings could have significant and direct consequences for those with existing custody rights, but simply was not confronted with a case in which a person with existing custodial rights sought to intervene. *C.T.P.* noted that adoption is "a judicial act which creates a complex set of legal relationships similar to those existing between a natural parent and child." *Id.* at 715 (quoting *In re Estate of R.M.*, 356 S.W.3d 250,

14

252 (Mo. App. E.D. 2011)). *C.T.P.* further noted that "[o]ne of those legal relationships is that of 'custody.'" *Id.*; *see also In re Adoption of R.S.*, 231 S.W.3d 826, 830-31 (Mo. App. S.D. 2007) ("While an adoption certainly entails the adoptive parents receiving both legal and physical custody of the child, it is different than just granting custody to a parent or a third party.").[5] Thus, although *C.T.P.* clearly held that an interest in *establishing* custody was an insufficient interest to warrant intervention as a matter of right, *C.T.P.* did not intend to address whether the interest of a person having *existing* custodial rights would be sufficient to support intervention as a matter of right in adoption proceedings.

When *C.T.P.* did mention existing custodial rights, *C.T.P.* stated: "Because an adoption establishes a parent-child relationship for all purposes, the statutory procedures for adoptions set forth in Chapter 453 require service of an adoption petition upon persons whose *existing* parental or custodial rights will be severed by adoption." *C.T.P.*, 452 S.W.3d at 715 (emphasis in original).[6] Section 453.060.1 requires that a writ of summons and a copy of the adoption petition must be served

---

[5] *C.T.P.* cited this language from *In re Adoption of R.S.*, 231 S.W.3d 826, 830-31 (Mo. App. S.D. 2007). *C.T.P.*, 452 S.W.3d at 716.

[6] Although *C.T.P.* implied that those served by section 453.060.1 would be subject to having their existing custodial rights severed (which would certainly be the case for natural parents, *see* section 453.090.1), it is not entirely clear that this would be the case in the present scenario, as Grandmother's joint custody rights were those of a third party that had previously been established by prior court order.

on certain persons and entities.  Section 453.060.1(3) provides that a writ of summons and a copy of the petition must be served on "[a]ny person, agency, organization or institution . . . having custody of the child sought to be adopted under a decree of a court of competent jurisdiction even though its consent to the adoption is not required by law[.]"  Section 453.060.4 provides that, upon service,

> the court may act upon the petition without the consent of any party, except that of a parent whose consent is required by sections 453.030 to 453.050, and the judgment is binding on all parties so served.  Any such party has the right to appeal from the judgment in the manner and form provided by the civil code of Missouri.

Although this language does not specifically address intervention or what a party so served may do in the proceeding, the legislature granted an express right of service and right of appeal to any of the enumerated parties served under section 453.060.1.  This statutory language provides further support for the proposition that a "person . . . having custody of the child sought to be adopted" has a direct interest in the adoption proceedings.

We conclude that Grandmother had a right to intervene in the adoption proceedings pursuant to Rule 52.12(a)(2).  The trial court misapplied the law in denying Grandmother intervention.[7]

---

[7] Father and Stepmother make further arguments which seek to attack the 2021 custody judgment which declared the joint custody arrangement between Father and Grandmother.  Father and Stepmother argue that the judgment was unconstitutional and invalid.  However, the validity of that judgment is not properly before us in this appeal.  We do not, therefore, address whether the

16

## Conclusion

The circuit court's judgment and decree of adoption is reversed and the matter remanded for further proceedings consistent with this opinion.

_____
Thomas N. Chapman, Judge

All concur.

---

prior order awarding joint custody between a natural parent (Father) and a third party (Grandmother) was authorized.  Father and Grandmother stipulated to entry of the judgment awarding them joint custody. Neither of them challenged the validity of said judgment by direct appeal.